UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ANNA SAMPSON,

                    Plaintiff,

        -against-

SARAH LAWRENCE COLLEGE, CARRIAGE
CONSTRUCTION CORP. AND EMPIRE
PAVING & MASONRY, INC.,

                    Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**

18 Civ. 7518 (JCM)

        Plaintiff Anna Sampson ("Plaintiff") brings this action against Sarah Lawrence College ("SLC" or "Defendant"), Carriage Construction Corp. ("Carriage") and Empire Paving & Masonry, Inc. ("Empire")[1] to recover for personal injuries allegedly suffered by Plaintiff when she slipped and fell on a patio in front of the Westlands[2] Dormitory on SLC's campus (the "Westlands Patio" or the "Patio") when she was a student at SLC on November 14, 2017. (Docket No. 19).   Before this Court is SLC's Motion for Summary Judgment, dated September 22, 2020, pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Motion"). (Docket No. 51).[3]  Plaintiff opposed the Motion on October 30, 2020, (Docket No. 56), and SLC replied on November 6, 2020, (Docket No. 61).  For the reasons set forth below, the Court denies SLC's Motion.

---

[1] Although Carriage and Empire are named defendants in this action and subject to crossclaims by SLC, (Docket Nos. 19, 27), they have not appeared.

[2] The parties' papers spell the name of the building where Plaintiff fell as both "Westland" and "Westlands." (*Compare* Docket No. 53 at 1, *with* Docket No. 56 at 13).  For ease of reference, and because the campus map referenced by both parties throughout this litigation uses the second spelling, the Court will use "Westlands." (*See* Docket No. 58-7; *see also* Docket Nos. 53-13 at 5:18-23; 58).

[3] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 29).

## I. BACKGROUND

The following facts are taken from SLC's Statement of Material Facts submitted pursuant to Local Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, ("SLC 56.1"), (Docket No. 52-1), Plaintiff's Response to SLC's Rule 56.1 Statement, ("Pl. 56.1 Resp."), and Counterstatement of Uncontested Facts Pursuant to Rule 56.1, ("Pl. 56.1 Counterstatement"), (Docket No. 58-1), and the exhibits[4] submitted by the parties in support of their contentions. The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (quoting *Novella v. Westchester Cnty.*, 661 F.3d 128, 139 (2d Cir. 2011)) (internal quotation marks omitted). Any disputes of material fact are noted.

At approximately 9:25 a.m. on November 14, 2017, Plaintiff, a resident of Westlands Dormitory,[5] traversed the southern portion of the Westlands Patio to attend a film class. (SLC 56.1 ¶¶ 1-2; Pl. 56.1 Resp. ¶¶ 1-2; *see also* Docket Nos. 53-4 at[6] 97:17-101:7, 102:11-24, 112:8-10;[7] 53-7 at 1). The Patio is a raised area along the length of the Westlands Dormitory's southern side that is finished with stones of various sizes and connects to a walkway and grass field below via two flights of stairs. (SLC 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2; Pl. 56.1 Counterstatement ¶ 3; Docket Nos. 58-2 ¶ 7; 58-7; 61-1 at 2). Plaintiff alleges that she suffered personal injuries

---

[4] Whereas the Court need only consider the cited materials in a Rule 56.1 statement, the Court may also rely on evidence in the record even if uncited. *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014); Fed. R. Civ. P. 56(c)(3).

[5] According to the map of SLC, the Westlands building also houses a variety of administrative offices, including Admission and Financial Aid as well as the office of the Dean of Studies and Student Life. (Docket No. 58-7; *see also* Docket No. 58 at 2).

[6] All page number citations refer to the page number assigned upon electronic filing unless otherwise noted.

[7] Because Docket No. 53-4 does not appear to have been assigned page numbers upon electronic filing, the Court refers to the page numbers on the original document.

from a fall at the top of the stairs on the southwest side of the Patio when the front of one of her shoes got caught on an uneven piece of stone, causing her to lose her balance, and fall part-way down the stairs. (Def. 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2; Pl. 56.1 Counterstatement ¶ 6; Docket No. 53-4 at 102:11-106:19, 121:18-122:5). Plaintiff grabbed the stairway railing but her ankle and knee hit the ground, and although she did not lose consciousness, she was unable to move or open her eyes.[8] (Docket No. 53-4 at 103:5-11, 118:20-124:19). When Plaintiff opened her eyes, a female student helped her to a nearby bench and alerted a security officer, who called for a medical transport car. (*Id.* at 125:23-129:8, 132:5-22). Plaintiff was treated briefly for her knee and ankle at SLC's health center, and filled out a statement describing the accident. (*Id.* at 135:20-145:4, 148:3-151:6; *see also* Docket No. 58-5). Two days later, Plaintiff flew home to Georgia for Thanksgiving break, where she was diagnosed with a concussion. (*See generally* Docket No. 53-4 at 152:14-204:8).

Plaintiff testified that while a student at SLC,[9] she typically followed a "routine," rising "early" in the morning, getting ready for her day, and then going straight to her film class before eating breakfast with her friends. (Docket No. 53-4 at 98:9-18). She always took the same route to film class, and estimated that she had traversed the southern side of the Westlands Patio "[a]pproximately more than 20 times." (*Id.* at 112:3-13; *see also* Docket No. 53-13 at 19:18-21:23). On the morning of the incident, after exiting the Westlands Dormitory, Plaintiff turned right on the Patio and planned on walking down the steps at the Patio's west side. (Docket No. 53-4 at 102:8-103:4). She fell when she "made . . . a curve to go down the stairs." (*Id.* at 110:23-

---

[8] Plaintiff could not specifically recall hitting her head. (Docket No. 53-4 at 120:3-5).

[9] Plaintiff's accident occurred during the first semester of her freshman year at SLC. (*See* Docket Nos. 53-4 at 31:17-20, 88:5-10; 53-13 at 51:1-52:14). Separately, citations to Plaintiff's second deposition, at Docket No. 53-13, refer to the page numbers reflected on the deposition transcript itself rather than the page numbers assigned upon electronic filing.

111:13).  Plaintiff was "on pace" to arrive at class early, and immediately preceding her fall, was

looking "ahead," without listening to music or using her cell phone. (*Id.* at 101:8-12, 111:14-23,

124:20-125:9; *see also* SLC 56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3).  Plaintiff was wearing glasses, carrying

a "light" backpack, and had her cellphone in her pocket. (Docket No. 53-4 at 114:21-115:25,

124:20-25).  She was alone. (*Id.* at 125:5-6).  Plaintiff further testified that the weather was

"cloudy," without precipitation or snow,[10] and the ground was not slippery.[11] (*Id.* at 114:4-15).

When shown two photographs taken of the Patio a few hours after the incident, Plaintiff drew

blue circles around the stone that caused her fall, and a blue square around the specific portion of

the stone that caught her foot.[12]  (SLC 56.1 ¶ 5; Pl. 56.1 Resp. ¶ 5; Docket No. 53-4 at 112:17-

21; 116:23-117:18; *see also* Docket Nos. 53-5; 53-9; 58-4 at 2-3).

---

[10] The parties dispute whether the correct geographic location of SLC's campus is in the City of Yonkers or the
Village of Bronxville, New York, as SLC maintains a Bronxville P.O. box, but is described as "occup[ying] 44
wooded acres in Yonkers, NY" on its website. *See* Sarah Lawrence College At-a-Glance,
https://www.sarahlawrence.edu/about/ (last visited Aug. 26, 2021); (*compare* Docket No. 61-1 at 1, *with* Docket No.
58-2 ¶ 22 n.2).  However, the Court takes judicial notice that consistent with Plaintiff's testimony, between the hours
of 9:00 a.m. and 10:00 a.m. on the morning of the accident, there was no precipitation and conditions were "fair" or
"cloudy" in these locations. (*See* Weather History for Westchester County Airport Station, Weather Underground,
https://www.wunderground.com/history/daily/khpn/date/2017-11-14 (last visited August 26, 2021); Weather History
for Teterboro Station, https://www.wunderground.com/history/daily/KTEB/date/2017-11-14 (last visited August 26,
2021)); *see also Holley v. Marriott Int'l, Inc.*, No. 15-CV-6823 (ARR) (LB), 2017 WL 11587088, at *5 n.3
(E.D.N.Y. Sept. 7, 2017) ("[A] court can take judicial notice of the weather report for a given day."); Fed. R. Evid.
201; (Docket No. 53 at 3 n.2).

[11] Plaintiff's written statement and an accident report completed by SLC staff largely corroborate her testimony,
noting that Plaintiff "fell over uneven flagstone" on the Patio and that the weather was "dry" and "cloudy." (Docket
Nos. 58-5; 58-6).  However, they also reflect that Plaintiff "went left out of the door" of the Westlands Dormitory
and was "rushing" to get to class. (Docket Nos. 58-5; 58-6).  When asked about these discrepancies at her
deposition, Plaintiff asserted that she was not rushing and "went right," not left. (Docket No. 53-4 at 156:21-162:2).
She could not remember why she relayed different information in her statement. (*See id.*).

[12] Larry Hoffman ("Hoffman"), SLC's Assistant Vice President of Public Safety when the accident occurred,
testified during SLC's Rule 30(b)(6) deposition that he took photographs of the Patio when preparing the accident
report "a couple hours" after Plaintiff's fall. (Docket No. 53-6 at 9:15-24, 11:11-22, 26:22-28:19, 30:24-31:4).  That
same day, he drew a circle on at least one such photograph to mark the area where SLC staff originally thought
Plaintiff fell. (*Id.* at 28:20-30:19; *see also* Docket No. 58-12 at 73:4-24).  Although Hoffman could not specifically
recall whether he used yellow ink, (Docket No. 53-6 at 30:9-11), Maureen Gallagher ("Gallagher"), SLC's Assistant
Vice President of Facilities at the time of the incident who also testified on behalf of SLC, confirmed that Hoffman
drew yellow circles on these photographs and that no work has been done on the area where Plaintiff fell since the
accident date, (Docket No. 58-12 at 73:4-24, 89:13-23).  Although Plaintiff could not recall whether the photographs
she reviewed at her deposition were fair and accurate representations of the accident site on the date of the incident,
two of them contain yellow circles, indicating that they are the same photographs that Hoffman took shortly after

Based on these and other photographs of the scene, as well as an inspection, SLC's

expert, Peter C. Taylor, P.E. ("Taylor"), submitted a report[13] finding a maximum height

differential of 7/16 of an inch between the stone Plaintiff alleges caused her fall and the adjacent

stone. (Docket No. 61-1 at 1-3; SLC 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7).  However, Plaintiff's expert,

Steven Zalben ("Zalben"), submitted an affidavit and report noting a 1/2 inch differential on the

northeast side of the subject stone[14] – the same side Plaintiff "encountered" when she fell – as

well as "many missing mortar joints," loose pieces of flagstone, and "spalled and damaged

flagstones" on the Patio. (Docket Nos. 58-2 ¶¶ 7, 9; 58-3 at 2-3, 7; *see also* Pl. 56.1

Counterstatement ¶ 7.2).  According to Zalben, all of these characteristics constitute "defects."

(Docket Nos. 58-2 ¶ 25; 58-3 at 7).  Zalben also observed that the north side of the subject stone

demonstrates "vertical movement" when pressed downwards even though the south side does not

do so, "indicat[ing] that there is a void below [the north side] and the . . . stone is not properly set

in its bedding." (Docket Nos. 58-2 ¶ 9; 58-3 at 3; Pl. 56.1 Counterstatement ¶ 7).  Moreover, the

mortar surrounding the subject stone "looks new" because it is a "light gray" color and "clean,"

---

she fell. (*See* Docket No. 58-4 at 110:8-11, 112:17-21, 116:23-117:3; *see also* Docket Nos. 53 at 2-3; 53-5; 53-9; 58-2 ¶ 12).  Furthermore, Plaintiff testified that even though the yellow circles incorrectly identified the stone where she fell, the photographs accurately "show[ed] where [her] foot got caught," and initialed her markings of that location in blue. (Docket No. 53-4 at 109:3-110:5, 116:23-117:18, 121:21-122:2).  Absent any evidence to the contrary, the Court concludes that these and any other photographs or measurements of that area taken after that date and relied on by the parties are accurate. *Cf. Pokigo v. Target Corp.*, 13-CV-722(LJV)(HKS), 2017 WL 1078758, at *4 (W.D.N.Y. Mar. 20, 2017).

[13] Plaintiff asserts that the Court cannot consider the originally-submitted version of Taylor's report because it is unsworn, and thus, contains inadmissible hearsay that cannot support a motion for summary judgment. *See generally Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005); (Docket Nos. 56 at 5-6; 53-12).  However, SLC has submitted a sworn and notarized version of the same report, as well as an affidavit declaring under penalty of perjury that the report's contents are based on Taylor's investigation of this case as well as his knowledge, education and experience. (Docket Nos. 61-1; 61-2).  Thus, SLC has cured this seemingly inadvertent error and the Court will consider Taylor's affidavit and the corrected version of his report. *See* 28 U.S.C. § 1746; *Hyundai-Wia Mach. Am. Corp. v. Rouette*, No. 3:10-cv-2020 (JCH), 2013 WL 395474, at *4 (D. Conn. Jan. 31, 2013); *Owens v. United States*, 03 CV 3961 (CLP), 2006 WL 8435230, at *4 (E.D.N.Y. Apr. 6, 2006).

[14] Zalben measured the subject stone and the mortar that surrounds it to be approximately thirteen inches wide by twenty-five inches long, with the shorter sides on the northern and southern ends. (Docket No. 58-2 ¶ 9).  He also measured thirty-two inches between the stone and the wall at the southern side of the Patio. (*Id.*).

without any missing pieces, spalling or cracking, whereas the "nearby" mortar looks "older" due to its darker color as well as cracking and missing pieces. (Docket Nos. 58-2 ¶¶ 12-13; 58-3 at 4; Pl. 56.1 Counterstatement ¶ 10).  Whereas Taylor opined that the 7/16 of an inch height differential complies with all applicable property and building codes, (Docket No. 61-1 at 5-6), Zalben disagreed and concluded that both experts' measurements indicate that the Patio violates Section 303 of the American National Standards Institute ("ANSI") International Code Council ("ICC") A117.1 and the American Society Testing Materials' "Standard Practice for Safe Walking Surfaces," ("ASTM F1637-2013"), (Docket Nos. 58-2 ¶¶ 23-28; 58-3 at 6-8, 10-11). Zalben further asserted that the "uplifted flagstone exhibits detached masonry" in violation of the New York State Property Maintenance Code ("NYS PMC"), Sections 302.3, 306.1.1 and 702.1, and that all of these code violations as well as the deteriorated condition of the Patio contributed to Plaintiff's fall. (Docket Nos. 58-2 ¶¶ 25, 27-28; 58-3 at 6-9, 11).

SLC's Rule 30(b)(6) witnesses testified that they were unaware of any complaints regarding the surface of the Westlands Patio or steps in the five-year period before the date of the incident[15] – even after searching the portal of work orders used to keep track of maintenance requests on campus during that time. (Def. 56.1 ¶ 8; Pl. 56.1 Resp. ¶ 8; Docket Nos. 53-6 at 26:6-20; 58-12 at 18:20-22:9).  In addition, Maureen Gallagher ("Gallagher") testified that she informally inspected the entrances to the Westlands Dormitory and Patio by "walk[ing] [the] campus a great deal," and "would note" any problems "that caught [her] attention." (Docket No. 58-12 at 24:10-21).  Gallagher also performed formal inspections of all areas of campus every spring, and generally was responsible for determining what Patio repairs were needed based on these inspections. (*Id.* at 24:22-25:6, 31:17-25).  She further explained that a piece of slate or

---

[15] Similarly, Plaintiff testified that despite traversing the Patio numerous times per week from August to November 2017 to attend classes at SLC, she never complained about its condition. (Docket No. 53-13 at 19:18-23:22).

bluestone would create a tripping hazard, and thus, require maintenance, when raised "more than an inch to two inches" above the adjacent stone. (*Id.* at 47:7-48:12). She also opined that the height differential between the stones where Plaintiff fell was "not significant." (*Id.* at 47:7-48:12, 60:17-19).

Despite these assertions, Gallagher recalled that in the three-to-five years before November 2017, "slate had heaved" on the south side of the Westlands Patio surface, which had required repairs of stones other those in the area of Plaintiff's fall. (Pl. 56.1 Resp. ¶ 8; Docket No. 58-12 at 27:23-30:9, 33:22-34:3, 39:20-42:24).  According to Gallagher, a March 23, 2016 invoice to SLC from Carrington, one of SLC's contractors, indicates that Carrington corrected heaving "on the north side" of the Patio and also performed "pointing." (Pl. 56.1 Counterstatement ¶ 8; Docket No. 58-12 at 35:5-38:12).  The invoice states that Carrington "[r]emoved all broken bluestone tiles and replaced [them] with new bluestone . . . on fresh cement base" on the "[s]teps, [w]alks & [p]atio [a]rea at Westlands." (Docket No. 58-8 at 2). When shown a second invoice dated August 16, 2017 from Empire, another contractor, Gallagher testified that earlier that month, Empire had also performed work on the stones "closer to the front south side [of Westlands Patio] . . . near the president's office," "on the other side of the building compared to where [Plaintiff] claims to have fallen." (Pl. 56.1 Counterstatement ¶ 8; Docket No. 58-12 at 40:2-41:2).  The invoice states that the work encapsulated "[r]eplace[ment of] some blue stone . . . and broken and point[ing] some areas around Westland Terrace." (Docket No. 58-9).

Although Gallagher explicitly denied that either of these projects involved repairs to the specific area of Plaintiff's fall, (Pl. 56.1 Counterstatement ¶ 8; Docket No. 58-12 at 37:7-38:12, 42:20-24), Zalben's affidavit opines that the August 2017 invoice and differing coloration of the

mortar surrounding the stone where Plaintiff fell indicate that some amount of "repointing

(and/or removal, replacement or resetting of broken and loose bluestone) was done very near"

that area, "not long" before the incident, (Docket No. 58-2 ¶ 15; Pl. 56.1 Counterstatement ¶¶ 8,

10).  Moreover, Gallagher wrote in a November 14, 2017 e-mail to Hoffman regarding Plaintiff's

fall:

> Larry,
>
> Call me when you can?  Nothing we can do about this right now.  These slates are not
> even that bad.  With present weather and the way this community expects us to salt we
> can't make any repairs.  Plus we made many repairs this summer when slate was heaving
> on the front and rear terrace.
>
> You should share this with Steve and my response.  For both aesthetics and safety this
> terrace . . . need[s] to be replaced.  I hate our deferred maintenance.  Call me.
>
> Mo

(Docket No. 58-10 at 2; *see also* Pl. 56.1 Counterstatement ¶ 13).

When questioned about this e-mail at her deposition, Gallagher testified that the reference

to "heaving slate on the front and rear terrace" that was repaired the previous summer described

an area on the Patio separate from where Plaintiff fell, and at the time of those repairs, she did

not believe the accident site needed maintenance. (*See* Docket No. 58-12 at 62:24-63:5, 64:12-

65:7).  She further explained that her comment regarding "deferred maintenance" and the "need"

to "replace[]" the Terrace did not express a desire to remediate the accident site immediately, but

rather, referred to an "extensive" "wish list" of projects she would have "love[d]" to complete

but that due to "budget constraints," could not prioritize because they involved "condition[s] that

w[ere not] detrimental." (*See id.* at 65:19-66:24).

## II.  LEGAL STANDARDS

### A.  Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).  The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is material if it might affect the outcome of the suit under the governing law. *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583(LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012).

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prod.s, Inc.*, 530 U.S. 133, 150–51 (2000).  That said, the Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323).  If the moving party meets this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Id.*  "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing

that there is a genuine issue for trial,'" *id.* (quoting *Celotex*, 477 U.S. at 324; citing *Anderson*, 477 U.S. at 249–50), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## B.  Burden of Proof on Summary Judgment

New York law governs the substantive slip-and-fall claim.[16]  However, federal law applies to procedural aspects of the claim. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Because the moving party's burden of proof on a summary judgment motion is procedural, it is therefore governed by federal law. *Tingling v. Great Atl. & Pac. Tea Co.*, No. 02 Civ. 4196 (NRB), 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003) ("We find that the issue of what burden a movant for summary judgment bears when the ultimate burden of proof lies with the non-movant is procedural rather than substantive, under the distinction created by *Erie R. Co. v. Tompkins*, 304 U.S. 64 . . . (1938) and its progeny, and accordingly is subject to federal rather than state law.") (citing *Celotex*, 477 U.S. 317); *see also Hughes v. United States*, No. 12 Civ. 5109(CM), 2014 WL 929837, at *4 (S.D.N.Y. Mar. 7, 2014) (applying the federal burden of proof standard on a motion for summary judgment, explaining that "[e]ven though the substantive claims are governed under New York law, the procedural issues are determined under the federal standard."); *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 396 (E.D.N.Y. 2010)

---

[16] Because jurisdiction over this matter is based upon the parties' diversity of citizenship and the alleged acts occurred in New York, New York law governs the substantive claims. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938). This point is not in dispute. (*Compare* Docket No. 53 at 4-22, *with* Docket No. 56 at 6-18).

("[T]he respective burdens that the parties bear in a summary judgment motion are procedural rather than substantive, and are thus subject to federal rather than state law.").

The federal burden of proof on a motion for summary judgment differs from the corresponding standard under New York law in a slip-and-fall action. *See, e.g.*, *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 Fed. App'x 11, 12–13 (2d Cir. 2008) (summary order) (hereinafter "*Tenay II*"); *Vasquez v. United States*, 14-CV-1510 (DF), 2016 WL 315879, at *4–5 (S.D.N.Y. Jan. 15, 2016). "Under New York law, '[a] defendant who moves for summary judgment in a [sl]ip-and-fall case has the initial burden of making a *prima facie* showing that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover and remedy it.'" *Vasquez*, 2016 WL 315879, at *4 (quoting *Levine v. Amverserve Ass'n, Inc.*, 938 N.Y.S.2d 593, 593 (2d Dep't 2012)). Conversely, under federal law, the moving party "need not make any affirmative *prima facie* showing on [a] motion for summary judgment, and may discharge its burden of proof merely 'by pointing to an absence of evidence to support an essential element of [Plaintiff's] claim.'" *Id.* at *5 (quoting *Zeak v. United States*, No. 11 Civ. 4253(KPF), 2014 WL 5324319, at *8 (S.D.N.Y. Oct. 20, 2014); *see also Feis v. United States*, 394 Fed. App'x 797, 798–99 (2d Cir. 2010) (summary order)(applying New York substantive law and federal procedural law, finding that "contrary to plaintiff's assertions, defendant was not required to affirmatively disprove each element of plaintiff's [slip-and-fall] claim").[17]  Therefore, because the burden of proof on a

---

[17] *See also Tenay II*, 281 Fed. App'x at 12–13 (affirming district court's grant of summary judgment and noting that, although under New York law the moving party bears the initial burden of proof, under federal law "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions," and that therefore, where the non-movant bears the burden of proof at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.") (quotation marks and citations omitted); *Cruz v. Target Corp.*, No. 13 Civ. 4662(NRB), 2014 WL 7177908, at *3 (S.D.N.Y. Dec. 17, 2014) ("In federal court, it is the plaintiff who, as the nonmoving party, bears the burden of showing a genuine dispute of material fact, even though a New York state court would require

motion for summary judgment is procedural and federal law applies, SLC may meet its burden by "'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case,'" but need not "raise a *prima facie* case." *Hughes*, 2014 WL 929837, at *4 (quoting *Celotex*, 477 U.S. at 325).  If Defendants meet that burden, the burden then shifts to Plaintiff to present evidence on each element of the claim and demonstrate that a genuine issue of material fact exists for trial. *See Celotex*, 477 U.S. at 322–24; *Holcomb*, 521 F.3d at 137.

## III.  DISCUSSION

Under New York law, a plaintiff asserting a negligence claim must demonstrate "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 499 N.Y.S.2d 392, 392 (1985)) (internal quotation marks omitted).  In the context of premises liability and slip-and-fall cases, "the plaintiff must demonstrate that the landowner created the condition that caused the injury, or that the landowner had actual or constructive notice of the condition." *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004); *see also Decker v. Middletown Walmart Supercenter Store #1959 et al.*, 15 Civ. 2886 (JCM), 2017 WL 568761, at *4 (S.D.N.Y. Feb. 10, 2017) ("[T]he plaintiff must demonstrate that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it.").  Under New York law, Plaintiff bears the burden

---

the *defendant* to produce affirmative evidence on the key issue of whether the defendant had adequate notice of the spill.") (emphasis in original).

of proof on the elements of her premises liability claim at trial. *See Tenay II*, 281 Fed. App'x at 13.

Although the issue of whether a condition is sufficiently dangerous or defective to trigger liability is generally reserved for the factfinder, New York courts recognize an exception to this rule where as a matter of law, "a defendant 'may not be cast in damages for negligent maintenance by reason of trivial defects on a walkway . . . as a consequence of which a pedestrian might merely stumble, stub his toes, or trip over a raised projection.'" *See Hutchinson v. Sheridan Hill House Corp.*, 19 N.Y.S.3d 802, 809 (2015) (quoting *Guerrieri v. Summa*, 598 N.Y.S.2d 4, 5 (2d Dep't 1993)).  This exception, called the "trivial defect doctrine," provides that a condition may be simply too "insignificant" for a court to find a defendant negligent for failing to fix it, even if the condition caused the plaintiff's fall. *See Coyle v. United States*, 954 F.3d 146, 149 (2d Cir. 2020) (citing *Hutchinson*, 19 N.Y.S.3d at 809).  The court – not the jury – is responsible for "determin[ing] whether an alleged condition meets this triviality standard by reviewing 'all the specific facts and circumstances of the case.'" *Id.* (quoting *Hutchinson*, 19 N.Y.S.3d at 809).  A defendant seeking dismissal based on the trivial defect doctrine "must make a prima facie showing that the defect is, under the circumstances, physically insignificant and that the characteristics of the defect or the surrounding circumstances do not increase the risks it poses." *See Hutchinson*, 19 N.Y.S.3d at 810.  If the defendant does so, the burden shifts to the plaintiff to establish an issue of material fact. *See id.*

Here, SLC contends that (1) any defect on the Patio where Plaintiff fell is too trivial to trigger liability as a matter of law; and (2) there are no genuine disputes over whether SLC (a) created; (b) had actual notice of; or (c) had constructive notice of the condition that allegedly caused Plaintiff's slip and fall. (Docket Nos. 53 at 6-22; 61 ¶¶ 9-25).  In response, Plaintiff

argues that issues of fact exist as to whether the alleged defect was trivial and whether SLC created, or had actual or constructive notice of it. (Docket No. 56 at 6-18).

## A. Trivial Defect Doctrine

SLC's trivial defect argument is based on the fact that (1) the height differential between the stone where Plaintiff tripped is no greater than 1/2 of an inch; and (2) there is no evidence of any characteristics of the stone or surrounding circumstances that would increase its risks. (Docket Nos. 53 at 6-15; 61 ¶¶ 9-16, 20).  SLC further argues that any defect is trivial because, according to its expert, the Patio complies with ANSI ICC A117.1 which has been adopted by the Building Code of New York State.[18] (Docket No. 53 at 15-16).  Plaintiff responds that (1) the 1/2 inch height differential is not necessarily trivial or insignificant as a matter of law; and (2) numerous characteristics of the Patio and other circumstances increased the uplifted stone's risks, including (a) the uneven stones, cracks and crevices in the area of Plaintiff's fall; (b) the abruptness of the height differential; (c) the fact that the Patio is a heavily-trafficked walkway "just a few feet away from the Westlands Administration Building" atop a flight of stairs; and (d) the fact that Plaintiff's fall occurred during school hours. (Docket No. 56 at 6-13).  Plaintiff also contends that the Patio violates both ANSI ICC A117.1 and the NYS PMC. (*Id.* at 13-15).  The Court agrees that there are material issues of fact regarding whether the Patio's condition was dangerous or defective.

To determine whether an alleged defect on a walkway is trivial, "the court must consider 'the peculiar facts and circumstances of each case, including the width, depth, elevation, irregularity, and appearance of the defect as well as the time, place, and circumstances of the injury.'" *Scott v. United States*, No. 04 Civ. 4107 MBM, 2006 WL 302337, at *1 (S.D.N.Y. Feb.

---

[18] However, neither party cites any provision of a local code incorporating or adopting ANSI ICC A117.1.

9, 2006) (quoting *Tesak v. Marine Midland Bank*, 678 N.Y.S.2d 226, 226 (4th Dep't 1998)).

New York courts also "often rely on the judge's examination of photographs to determine

whether a defect is trivial as a matter of law." *Czochanski v. Tishman Speyer Properties, Ltd.*, 45

F. App'x 45, 47 (2d Cir. 2002) (summary order); *see, e.g.*, *Nathan v. City of New Rochelle*, 723

N.Y.S.2d 402, 403 (2d Dep't 2001); *Figueroa v. Haven Plaza Hous. Dev. Fund Co.*, 668

N.Y.S.2d 203, 203–04 (1st Dep't 1998).

"[G]enerally, a height differential of less th[a]n one inch . . . is non-actionable" when the

record is devoid of evidence of "any other circumstantial factors contributing to the injury."

*Scott*, 2006 WL 302337, at *2 (finding height differential of one inch or less between sidewalk

segments trivial where "it was not irregular, hidden from view, or otherwise compounded by the

time, place, or circumstances of the accident") (collecting cases); *see also Pokigo*, 2017 WL

1078758, at *5; *Nathan*, 723 N.Y.S.2d at 403.  However, "there is no 'minimal dimension test'

or per se rule that a defect must be of a certain minimum height or depth in order to be

actionable." *Trincere v. County of Suffolk*, 665 N.Y.S.2d 615, 616 (1997).  Indeed, "[e]ven a

small difference in height is actionable if the alleged defect has the characteristics of a trap, snare

or nuisance." *Pagano v. Rite–Aid Corp.*, 698 N.Y.S.2d 129, 130 (4th Dep't 1999).  "[A]

physically small defect [may also be] actionable" when its "surrounding circumstances or

intrinsic characteristics make [it] difficult for a pedestrian to see or identify as [a] hazard[] or

difficult to traverse safely on foot." *Hutchinson*, 19 N.Y.S.3d at 810.  For example, the New

York Court of Appeals has recognized "a jagged edge . . . ; a rough, irregular surface . . . ; the

presence of other defects in the vicinity . . . ; poor lighting . . . ; or a location – such as a . . .

premises entrance/exit, or heavily traveled walkway – where pedestrians are naturally distracted

from looking down," as factors that may preclude a finding that such a defect is too trivial to

trigger liability. *See id.* at 809–10.  Thus, the applicability of the trivial defect doctrine decidedly does not turn on the alleged defect's "size alone." *See id.* at 809.

     For these reasons, the Court rejects SLC's contention that the 1/2 inch height differential is enough to render the alleged defect trivial as a matter of law. *See id.* at 809–10; (Docket No. 53 at 8).  Moreover, SLC fails to appreciate numerous factors that support a finding that Plaintiff's fall resulted from one or more defects on the Patio and other "intrinsic characteristics . . . [which] magnify the danger[] . . . pose[d]" by the stone where Plaintiff fell. *See Hutchinson*, 19 N.Y.S.3d at 809; (Docket No. 53 at 8-11).   Here, there is no evidence of poor lighting, inclement weather or slippery conditions on the Patio that would render the area of Plaintiff's fall more dangerous. (Docket No. 53 at 11).  However, Plaintiff's expert opined that the vicinity of Plaintiff's fall is replete with other defects, including missing mortar and detached, deteriorated and spalled flagstones, that make the Patio unsafe. *See Hutchinson*, 19 N.Y.S.3d at 809; (Docket No. 58-2 ¶¶ 9, 25, 27).  Under similar circumstances, New York courts have recognized that a less-than-one-inch height differential on an uneven floor is sufficient to raise an issue of fact regarding the existence of a defect when combined with evidence of other dangerous conditions on the floor such as erosion, loose concrete and/or protruding stones. *See, e.g.*, *Baer v. 180 Varick LLC*, 158789/2014, 2016 WL 8193622, at *4 (Sup. Ct. N.Y. Cnty. Nov. 14, 2016); *Fazio v. Costco Wholesale Corp.*, 924 N.Y.S.2d 381, 383 (1st Dep't 2011); *see also Tineo v. Parkchester S. Condo.*, 759 N.Y.S.2d 9, 10 (1st Dep't 2003) (finding issue of fact where expert opined that "patch-repaired walkway surface was destabilizing underfoot because it was wide-cracked, depressed, sunken, and uneven").

     There is also evidence that the defective nature of the uplifted stone where Plaintiff fell may have been difficult to detect. *See Hutchinson*, 19 N.Y.S.3d at 810.  "'[F]actors which make

the [alleged] defect difficult to detect' require 'an assessment of the hazard in view of the peculiar facts and circumstances' and render summary judgment inappropriate." *Fosmire v. Kohl's Dep't Stores, Inc.*, No. 07-CV-6027, 2009 WL 891798, at *3 (W.D.N.Y. Mar. 31, 2009) (denying summary judgment where "[a] jury could find the particular sloping lip configuration used by [defendant] to guide pedestrians into its store incorporated a difficult to detect tripping hazard for the unwary customer") (quoting *Argenio v. Metro. Transp. Auth.*, 716 N.Y.S.2d 657, 659 (1st Dep't 2000)).  Plaintiff's expert observed a void directly below the highest side of the uplifted stone where Plaintiff fell – which is not obvious in the photographs – indicating that the stone was "not properly set in its bedding." (Docket No. 58-2 ¶ 9; *see also* Docket Nos. 53-5; 53-9; 58-4 at 2-3).  He further concluded that based on Plaintiff's testimony, the improperly set stone contributed to her fall because her foot came into contact with this side of the stone. (Docket No. 58-2 ¶¶ 9, 27).  Therefore, a jury could find that this hidden feature of the uplifted stone – combined with the other defects in its immediate vicinity – rendered the relatively low height of the stone more dangerous than it appeared to the average pedestrian. *See Fosmire*, 2009 WL 891798, at *3; *see also Glickman v. City of New York*, 746 N.Y.S.2d 24, 24–25 (1st Dep't 2002) (finding trial necessary due to "factual issues regarding whether the dip, even if trivial, presented a hazard due to factors which made it difficult to detect").

This is especially so in light of the fact that Plaintiff tripped on the uplifted stone after exiting the Westlands Dormitory, when she was about to use the stairway at the southwest side of the Patio. (SLC 56.1 ¶¶ 1-2; Pl. 56.1 Resp. ¶¶ 1-2; Docket No. 53-4 at 102:8-103:4, 110:23-111:13).  Courts have held that an alleged defect "is more likely to constitute a trap for the unwary" when it "exists in an area close to the entrance of a public building . . . because the pedestrian's expected attention will be focused on the store entrance and not on navigating height

differentials in the pavement." *Fosmire*, 2009 WL 891798, at *3; *see also Tesak*, 678 N.Y.S.2d at 227.  Stairways and heavily traveled public walkways pose similar issues of fact because pedestrians must take care to descend or ascend the height of the stairs safely and ensure that they do not bump into others, and, thus, are not focused solely on the ground. *See, e.g.*, *D'Nelson v. Costco Wholesale Corp.*, No. 03 CV 219 (CLP), 2006 WL 767866, at *6 (E.D.N.Y. Mar. 24, 2006) (finding that less-than-one-inch crevice between two slabs of concrete created issue of fact because it was located "at the bottom of [an] escalator, [where] a person . . . might reasonably focus their attention . . . where they were about to step, so as to safely exit the escalator"); *Argenio*, 716 N.Y.S.2d at 659 (finding issues of fact regarding whether 1/4 inch depression where plaintiff fell was defective where plaintiff testified to "looking straight ahead as she walked" in heavily traveled walkway); *Nin v. Bernard*, 683 N.Y.S.2d 237, 237–38 (1st Dep't 1999) (denying summary judgment where less-than-one-inch depression existed "at the top step of a steep stairwell"); *Shane v. Supernova New York Realty LLC*, No. 150390/11, 2013 WL 3723201, at *2 (Sup. Ct. N.Y. Cnty. July 8, 2013) (declining to grant summary judgment where plaintiff tripped on 1/2 inch depression between two pieces of granite on stairway ascending to hotel doors).

Here, the distance[19] between the uplifted stone and the stairway as shown in the photographs corroborates Plaintiff's testimony that her fall occurred when she was about to descend the stairs, and thus, was "looking ahead" rather than at the ground. (Docket Nos. 53-4 at 111:11-16; 53-5; 53-9; 58-4 at 2-3).  Although Plaintiff stated she was not walking to class with anyone else, there were other students in the vicinity. (Docket No. 53-4 at 125:5-126:10, 129:9-

[19] Taylor measured between six and seven feet between the top of the stairway and the northern edge of the uplifted flagstone. (Docket No. 61-1 at 3).

130:2).  Moreover, according to the map of SLC's campus, the Patio and stairway connect the

Westlands Dormitory and administrative offices with the southern portion of SLC's campus,

(Docket No. 58-7; *see also* Docket No. 61-1 at 1-2), and Plaintiff's expert opined that the above

conditions created an unsafe "means of egress" "from the building to the public way," which

violated NYS PMC Section 702.1[20] and contributed to Plaintiff's fall, (Docket No. 58-2 ¶ 27).

Consequently, a reasonable juror could find that despite the uplifted stone's minimal height,

Plaintiff did not notice it because she was focused on approaching the stairway safely without

bumping into anyone ascending it or losing her footing on the steps.  Thus, even assuming that

SLC established that the uplifted stone is trivial due to its minimal height, Plaintiff has raised

sufficient issues of material fact regarding whether the stone's location between the building exit

and stairway made it too difficult to detect. *See Hutchinson*, 19 N.Y.S.3d at 810; *Nin*, 683

N.Y.S.2d at 237–38, *Shane*, 2013 WL 3723201, at *2.  A jury is required to evaluate whether the

Patio's characteristics and location rendered the uplifted stone where Plaintiff fell defective. *See*

*Hutchinson*, 19 N.Y.S.3d at 809–10.

---

[20] Although violation of a local building code is not dispositive, it can constitute "some evidence of negligence." *See Cornelisse v. United States*, No. 09 Civ. 5049(JCF), 2012 WL 933064, at *7 (S.D.N.Y. Mar. 20, 2012) (collecting cases).  The parties' experts dispute (1) whether the Yonkers or Bronxville building code applies in light of SLC's Bronxville P.O. box and geographic location in Yonkers; and (2) whether the ANSI standard for handicap accessible routes or the NYS PMC, which are not specific to any particular municipality, permit a 1/2 inch height differential. (*Compare* Docket No. 61-1 at 5-6, *with* Docket No. 58-2 ¶¶ 22-28; *see also* Docket No. 56 at 14-15).  Irrespective of which municipality's building code governs, Plaintiff's expert's contention that the Patio violates the NYS PMC or ANSI ICC A117.1 creates additional issues of fact regarding whether the defect is non-trivial. *See Van Auken v. Adamkiewicz*, No. 07-CV-1225(GLS/DRH), 2009 WL 1437586, at *3 (N.D.N.Y. May 19, 2009) (finding issue of fact as to whether stairwell was defective due to plaintiff's expert's testimony that stairwell violated building code); *Miller v. Astucci U.S. Ltd.*, No. 04 Civ. 2201(RMB), 2007 WL 102092, at *5 (S.D.N.Y. Jan. 16, 2007) (noting that absent a showing that alleged building code violations were "approved or adopted by the [New York State] Legislature," alleged violations raised fact issue as to whether they caused the accident); *supra* n.18.

**B.  Creation of a Dangerous Condition**

SLC also argues there is no evidence that it created the alleged defect at issue. (Docket

No. 53 at 16-18).  Plaintiff does not contest this point or offer any evidence to the contrary. (*See*

Docket No. 56 at 15-17).  However, the Court briefly addresses it for completeness.

"To establish that a defendant created a dangerous condition or defect, a plaintiff must

point to 'some affirmative act' on the part of the defendant," *Vasquez*, 2016 WL 315879, at *7

(quoting *Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014)), that is both

"deliberate and intentional." *See Nussbaum v. Metro-N. Commuter R.R.*, 994 F. Supp. 2d 483,

493 (S.D.N.Y. 2014), *aff'd*, 603 Fed. App'x 10 (2d Cir. 2015) (quoting *Olsen v. K Mart Corp.*,

No. 04–CV–3648 (JMA), 2005 WL 2989546, at *4 (E.D.N.Y. Nov. 8, 2005)) (internal quotation

marks omitted); *see also Gonzalez*, 299 F. Supp. 2d at 192 ("Finding that the defendant created

the dangerous condition requires 'some affirmative act' on the part of the defendant.").

Although circumstantial evidence "may be sufficient to defeat a motion for summary judgment"

if it creates an inference that SLC created the condition through affirmative acts, "'[a] plaintiff

cannot avoid summary judgment through mere speculation and conjecture regarding how a

defendant may have created a particular hazard.'" *Vasquez*, 2016 WL 315879, at *7 (quoting

*Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335 (JMA), 2009 WL 1955555, at *6 (E.D.N.Y.

July 6, 2009)).   Moreover, the mere fact that a defendant "exclusively maintained" an area

containing an alleged defect "does not mean that [it] created the dangerous condition." *See*

*Zilgme v. United States*, No. 15-CV-130-A, 2017 WL 9516810, at *11 (W.D.N.Y. May 24,

2017), *report and recommendation adopted as modified*, No. 15-CV-130-A, 2017 WL 4784315

(W.D.N.Y. Oct. 24, 2017), *aff'd in part, vacated in part on other grounds, remanded,* 744 F.

App'x 25 (2d Cir. 2018)

There is no evidence showing how the uplifted stone became detached from its bedding. Plaintiff has not presented evidence that SLC created this condition. Nor has Plaintiff pointed to any circumstantial evidence that would create an inference that SLC created the condition. "Absent such evidence, Plaintiff[] cannot prove that [SLC] created the [dangerous condition], and summary judgment on that issue is warranted." *Strass v. Costco Wholesale Corp.*, 14-CV-06924 (PKC) (VMS), 2016 WL 3448578, at *4 (E.D.N.Y. June 17, 2016) (granting summary judgment where, *inter alia*, plaintiffs failed to identify any evidence that defendant created the condition at issue); *see also Cousin*, 2009 WL 1955555, at *7 (granting summary judgment where no evidence supported an inference that defendant created the dangerous condition and noting that "New York courts routinely grant summary judgment in favor of defendants in such circumstances"); *Polvino v. Wal-Mart Stores, Inc.*, No. 03-CV-950S, 2006 WL 2711461, at *2 (W.D.N.Y. Sept. 20, 2006) (granting summary judgment where "[t]here [wa]s no evidence in the record relating to whom or what caused the hanger to be on the floor, or how long the hanger was there"). Accordingly, the Court finds that Plaintiff cannot establish as a matter of law that Defendant created the dangerous condition.

## C. Notice of a Dangerous Condition

Because there is no evidence that SLC created the condition, Plaintiff must demonstrate either actual or constructive notice to establish her claim. *See Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 332 (E.D.N.Y. 1998). Plaintiff offers two theories of notice that she claims raise triable issues of fact and preclude summary judgment. Plaintiff argues that (1) Gallagher's e-mail to Hoffman on the accident date acknowledging the previous summer's repairs and that "this terrace . . . need[s] to be replaced" indicates that SLC had actual notice of the alleged defect; and (2) SLC had constructive notice of the alleged defect because Gallagher formally and informally inspected the Patio on a regular basis, and therefore, "knew" or "should have known"

about its existence. (Docket No. 56 at 15-17).  The Court finds that there is an issue of material

fact with respect to actual notice.  Therefore, the Court does not need to reach the second

argument.

"A defendant has actual notice if it either created the condition or received reports of it

such that it is actually aware of the existence of the particular condition that caused the fall."

*Cousin*, 2009 WL 1955555, at *6 (citing *Torri v. Big V of Kingston, Inc.*, 537 N.Y.S.2d 629,

630–31 (3d Dep't 1989)); *see also Nussbaum v. Metro-N. Commuter R.R.*, 603 Fed. App'x 10,

12 (2d Cir. 2015) (summary order) ("Actual notice requires that a defendant receive complaints

or similarly be alerted to the existence of the dangerous condition.") (citing *Matcovsky v. Days

Hotel*, 782 N.Y.S. 2d 64, 65 (1st Dep't 2004)).

A plaintiff may raise an issue of fact regarding actual notice by offering evidence that the

defendant knew that the particular complained-of condition was recurrent or unsuccessfully

undertook to fix it prior to the accident. *See, e.g.*, *Sampaiolopes v. Lopes*, 101 N.Y.S.3d 77, 78

(2d Dep't 2019) (holding that plaintiff raised issue of fact with respect to actual notice in light of

defendant's testimony that "water frequently dripped from a leaky gutter and created an icy

condition on the steps [where plaintiff fell], a condition which she attempted to address");

*Campone v. Pisciotta Servs., Inc.*, 930 N.Y.S.2d 62, 63 (2d Dep't 2011) (denying summary

judgment due to evidence that "defendants had actual notice of an alleged recurrent dangerous

condition regarding water runoff from the roof of the subject premises, which pooled in the area

where the injured plaintiff fell"); *Griffith v. 505 W. 142nd St. Hous. Dev. Fund Corp.*, 703

N.Y.S.2d 117, 118 (1st Dep't 2000) (denying summary judgment due to deposition testimony

that subject ceiling "often leaked in different areas, that plaintiff's supervisor called the

22

management office about the leaks numerous times before the accident, and that on several occasions management undertook to fix the ceiling").

However, courts have also warned that a defendant's previous attempt to repair the area of an alleged defect is insufficient to create an issue of fact absent specific evidence connecting the previous repair work with the complained-of condition. *Cf. Graziano v. Target Corp.*, 17-CV-3927(SJF)(AKT), 2019 WL 1958019, at *6 (E.D.N.Y. May 2, 2019); *see also Ferrara v. Transform KM LLC*, No. 6:20-CV-0236 (MAD/ML), 2021 WL 3188389, at *3 (N.D.N.Y. July 28, 2021) ("Vague reference to a previous maintenance order . . . with no further context of [its] connection to the condition of the scooter at issue is insufficient to raise a triable issue of fact as to whether Defendant had actual or constructive notice in this case."); *Faville v. Cty. of Albany*, 82 N.Y.S.3d 208, 211 (3d Dep't 2018) (granting summary judgment where "[n]one of the maintenance and repair records . . . indicate[d] that the escalators had issues with speeding up, which is the condition of which plaintiff complain[ed]").  In other words, "[e]vidence of some past repair work in the vicinity of [the] accident is not proof of negligence" on its own. *See Smith v. Target Corp.*, No. 1:10-CV-1457 (MAD/CFH), 2012 WL 5876599, at *13 (N.D.N.Y. Nov. 20, 2012).  Similarly, "a 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused [a] plaintiff's fall." *Piacquadio v. Recine Realty Corp.*, 84 N.Y.2d 967, 969 (1994) (quoting *Gordon v. Am. Museum of Nat. Hist.*, 501 N.Y.S.2D 646, 647 (1986)); *see also Faville*, 82 N.Y.S.3d at 211.

Here, Plaintiff argues that Gallagher's November 14, 2017 e-mail after the accident referencing previous repairs to the Patio "clearly acknowledges that [SLC] had actual notice of [the] condition," but did not repair it because Gallagher incorrectly believed it was insignificant. (*See* Docket No. 56 at 16).  SLC responds that the e-mail is irrelevant because (1) it only reflects

Gallagher's "subjective opinion" regarding the need for repair; and (2) Gallagher testified that the subject repairs were not performed in the same area on the Patio as Plaintiff's fall. (Docket No. 61 ¶ 24). Both of these counterarguments fail.

First, Gallagher's e-mail is not irrelevant simply because it reflects her personal opinion regarding whether repairs to the Patio were needed. (*See* Docket No. 61 ¶ 24). Although a lay opinion regarding matters requiring specialized knowledge is generally inadmissible, *see* Fed. R. Evid. 702(c); *but see Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 77 (E.D.N.Y. 2012), Plaintiff does not appear to be offering this e-mail to prove that the Patio was, in fact, dangerous, (Docket No. 56 at 16). Rather, Plaintiff argues that the e-mail creates an issue of material fact as to whether Gallagher, an SLC employee, had notice of the condition which caused Plaintiff's fall before the injury. (*See id.*). Evidence that a defendant's associate acting in the scope of her employment knew of an alleged defect is highly relevant to whether the defendant had such notice as well. *See* Fed. R. Evid. 401; *cf. Riley v. Marriott Int'l, Inc.*, No. 12-CV-6242P, 2014 WL 4794657, at *6 (W.D.N.Y. Sept. 25, 2014).

Second, SLC's reliance on Gallagher's testimony regarding the limited scope of the previous repairs only magnifies other evidence in the record supporting a contrary view. (*See* Docket No. 61 ¶ 24). Indeed, Plaintiff offers further evidence suggesting that the repairs were performed in the same area of Plaintiff's fall, and were meant to address the same defects that affected the uplifted stone. (*See* Docket Nos. 58-2 ¶¶ 15, 19; 58-9). Viewed together, Gallagher's e-mail and this other evidence create an issue of material fact as to whether SLC knew that the specific stone where Plaintiff fell was unsafe, but failed to repair it in a timely fashion. *Cf. Ferrara*, 2021 WL 3188389, at *3. For example, Gallagher's e-mail expressly notes that "the front . . . terrace" received repairs for "heaving slate" the previous summer; states that

"th[e] terrace . . . need[s] to be replaced;" and expresses disdain for SLC's "deferred maintenance." (Docket No. 58-10).   In turn, the August 2017 invoice for those repairs describes the "work to be carried out" as "replace[ment of] some . . . loose and broken" stones "around Westlands Terrace." (Docket No. 58-9; *see also* Docket No. 58-12 at 40:6-41:20, 64:12-18). Whereas SLC denies that these repairs covered the specific area of Plaintiff's fall or that the uplifted stone required maintenance, (Docket No. 58-12 at 42:20-24, 64:23-65:3), Plaintiff's expert opined that the invoice and coloring of the mortar adjacent to the uplifted stone indicate that the repairs may have been done "very near" the same stone, (Docket No. 58-2 ¶¶ 15, 19). Moreover, like the "loose" stones addressed by those repairs, the subject stone was "[im]properly set in its bedding." (*Id.* ¶¶ 9-10, 15; *see also* Docket No. 58-9).

All of this evidence is sufficiently specific to connect the uplifted stone where Plaintiff fell to the same conditions that SLC previously undertook to fix, and thus, raises an issue of fact as to whether SLC knew of its existence. *See Griffith*, 703 N.Y.S.2d at 118; *see also Miller*, 2007 WL 102092, at *4–6 (denying summary judgment in light of evidence that president of lessee of premises instructed workers to "check" cabinet in the room where plaintiff fell and the same cabinet fell and struck plaintiff two months later).   This case is therefore distinguishable from *Solazzo v. New York City Transit Auth.*, 810 N.Y.S.2d 121, 122 (2005), and *Piacquadio v. Recine Realty Corp.*, 622 N.Y.S.2d 493, 494 (1994), cited by SLC, both of which involved recurring hazardous conditions and no evidence that the defendants were aware of the particular conditions that caused the subject accidents. (*See* Docket No. 61 ¶ 24).   Gallagher's reference to "deferred maintenance" in her e-mail also supports a finding that contrary to her testimony, SLC intended to have the uplifted stone repaired, but neglected to ensure that this was done before the accident. *See Gregori v. Eckerd Corp.*, No. 01-CV-0092E(SR), 2002 WL 1628947, at *1–2 (W.D.N.Y.

June 5, 2002) (finding issue of fact as to actual notice due to evidence that after the accident, defendant's cashier acknowledged that "[t]hey were supposed to clean . . . up [the milk puddle which caused the accident] awhile ago").  A jury is required to weigh this conflicting evidence and determine whether or not it supports a finding that SLC was aware that the specific area where Plaintiff fell was dangerous before the accident.  Accordingly, summary judgment is inappropriate.

## IV.  CONCLUSION

For the foregoing reasons, SLC's motion for summary judgment is denied.  The Clerk is respectfully requested to terminate the pending Motion (Docket No. 51).

Dated:   August 26, 2021
         White Plains, New York

SO ORDERED:

JUDITH C. McCARTHY
United States Magistrate Judge